**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| WHIRLPOOL PROPERTIES, INC., WHIRLPOOL CORPORATION, and MAYTAG PROPERTIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> FILTERS FAST, LLC <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

COME NOW Plaintiffs, Whirlpool Properties, Inc., Whirlpool Corporation and Maytag Properties, LLC (collectively referred to as "Whirlpool") for their Complaint against Filters Fast, LLC ("Defendant" or "Filters Fast"), and state as follows:

## PARTIES

1.      Plaintiff Whirlpool Properties, Inc. is a Michigan corporation having its principal place of business at 500 Renaissance Drive, Suite 101, Saint Joseph, Michigan. Whirlpool Properties, Inc. owns numerous trademarks, including U.S. Trademark Registration Nos. 4,983,312; 1,251,511; 1,670,524; 937,550 and 626,550 ("the Whirlpool Registrations"), U.S. Trademark Registration Nos. 5,232,741 and 4,679,632 ("the EveryDrop Registrations"), and U.S. Trademark Registration Nos. 2,520,284; 2,520,285 and 1,585,507 ("the KitchenAid Registrations").

2.      Plaintiff Whirlpool Corporation is a corporation organized and existing under the laws of the state of Delaware with a principal place of business at 2000 North M-63, Benton Harbor, Michigan.  Whirlpool Corporation owns United States Patent No. 7,000,894 ("the '894 patent").

3.      Plaintiff Maytag Properties, LLC is a limited liability company organized and existing under the laws of the state of Michigan with a principal place of business at 500 Renaissance Drive, Suite 101, Saint Joseph, Michigan.  Maytag Properties, LLC owns numerous trademarks, including U.S. Trademark Registration Nos. 868,637; 2,638,631; 4,210,316 and 2,258,041 ("the Maytag Registrations").

4.      Plaintiffs Whirlpool Properties, Inc. and Maytag Properties, LLC, own, manage, enforce, license, and maintain intellectual property, including trademarks. Plaintiffs Whirlpool Properties, Inc. and Maytag Properties, LLC license certain trademark rights to Plaintiff Whirlpool Corporation, including the federal trademark registrations at issue in this suit.

5.      Defendant is a limited liability company organized under the laws of the state of North Carolina with a principal place of business at 5905 Stockbridge Drive, Monroe, North Carolina.

## JURISDICTION & VENUE

6.      Count I arises under the patent laws of the United States, Title 35 United States Code.  The jurisdiction of this Court is proper under Title 35 U.S.C. § 271, *et seq*. and 28 U.S.C. §§ 1331, 1332, and 1338.

7.     Count II arises under the laws of the United States prohibiting infringement of federally registered trademarks, specifically, the Lanham Act, 15 U.S.C. § 1114.  Count III for false designation of origin and Count IV for false advertising arise under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The jurisdiction of this Court is proper under 15 U.S.C. § 1121 *et seq.* and 28 U.S.C. § 1331, § 1332, and § 1338.

8.     Count V, for common law trademark infringement, and Count VI, for unfair or deceptive trade practices in violation of N.C.G.S.A. § 75-1.1, are so related to Counts II-IV that they form part of the same case or controversy, and thus the jurisdiction of this Court is proper under 28 U.S.C. § 1367.

9.     Defendant is a distributor and seller of water filters for refrigerators.

10.    On information and belief, Defendant has offered for sale and sold throughout the United States Whirlpool-compatible replacement water filters that infringe one or more claims of the '894 patent, such as the Aqua Fresh water filters bearing Model No. WF537, which is the Whirlpool "Filter 1" design, and Aqua Fresh water filters bearing Model No. WF710, which is the Whirlpool "Filter 3" design.

11.    On information and belief, Defendant has offered for sale and sold Whirlpool-compatible refrigerator water filters that infringe one or more claims of the '894 patent, such as Model Nos. WF537 and WF710, to residents and citizens of North Carolina who reside within this district.

12.    On information and belief, Defendant has infringed, and continues to infringe, Whirlpool's federally registered "Whirlpool", "EveryDrop", and "KitchenAid" trademarks, as well as Whirlpool's rights under common law, for use on water filters,

3

specifically in Defendant's unauthorized use of Whirlpool's marks in its advertising and promotion of its water filters, leading to the sale and distribution of its water filters, to residents and citizens of North Carolina who reside within this district.

13. On information and belief, Defendant has infringed, and continues to infringe, Maytag's federally registered "Maytag" and "Puriclean" trademarks, as well as Maytag's rights under common law, for use on water filters, specifically in Defendant's unauthorized use of Maytag's marks in its advertising and promotion of its water filters, leading to the sale and distribution of its water filters, to residents and citizens of North Carolina who reside within this district.

14. The Court has personal jurisdiction over Defendant because it is a North Carolina company, with its principal place of business in North Carolina, and therefore, has continuous and systematic contacts with the State of North Carolina. Furthermore, Defendant has advertised for sale the infringing filters via the internet, in the State of North Carolina, including the Western District of North Carolina, and has offered for sale and sold the infringing products to customers in the state of North Carolina, including the Western District of North Carolina, thereby harming Whirlpool by offering to sell and/or selling infringing products in this district.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Defendant is a North Carolina company, and therefore resides in the State of North Carolina and in this judicial district. *See TC Heartland, LLC v. Kraft Foods Group Brands LLC,* --- S. Ct. ---, 2017 WL 2216934, No. 16-341 (May 22, 2017). In addition, Defendant has a regular and established business in the district and a substantial part of

the events giving rise to the claims occurred in this district. *Id.* For instance, Defendant sold and distributed infringing products in this district, and thereby committed the complained-of acts of infringement, false advertising, false designation of origin, and unfair or deceptive trade practices in this district, and Defendant's conduct was directed towards and intended to cause harm to Whirlpool in this district.

16. Moreover, venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred in this district. Defendant has infringed, and continues to infringe Whirlpool's federally registered trademarks and common law rights in this district, specifically in Defendant's unauthorized use of Whirlpool's marks in its advertising and promotion of its water filters, leading to the sale and distribution of its water filters, and has thereby committed the complained-of acts of infringement, false designation of origin, and unfair or deceptive trade practices in this district, and Defendant's conduct was directed towards and intended to cause harm to Whirlpool in this district.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,000,894

17. Whirlpool repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

18. On February 21, 2006, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 7,000,894 ("the '894 patent") entitled "Fluidic Cartridges and End Pieces Thereof." On March 3, 2014, the USPTO issued an ex parte reexamination certificate for the '894 patent. Appended as

Exhibit A is a true and correct copy of the '894 patent, inclusive of the ex parte reexamination certificate.

19.     Whirlpool is the owner by assignment of the entire right, title and interest in and to the '894 patent, including the right to sue and recover past, present, and future damages for infringement.

20.     Whirlpool manufactures products that practice the '894 patent, including Whirlpool "Filter 1" and "Filter 3" refrigerator water filters, and marks such products with the '894 patent.

21.     The validity and enforceability of the '894 patent has been recognized and acknowledged in Consent Judgments in the patent infringement cases captioned *Whirlpool Corporation v. Brauchla TV, Inc. d/b/a Brauchla TV & Appliance*, Civil Action No. 2:15-cv-2068 (E.D. Tex. Jan. 27, 2016) (Document 5); *Whirlpool Corporation v. National Trade Supply, LLC*, Civil Action No. 2:15-cv-1701-JRG (E.D. Tex. Jan. 22, 2016) (Document 5); *Whirlpool Corporation v. Zipras, Inc.*, Civil Action No. 2:15-cv-1636-JRG (E.D. Tex. Jan. 8, 2016) (Document 7); *Whirlpool Corporation v. Air 1 Supply, Inc.*, Civil Action No. 2:15-cv-1640-JRG (E.D. Tex. Oct. 30, 2015) (Document 6), *Whirlpool Corporation v. Global Parts Supply, LLC d/b/a Pandora's OEM Appliance Parts*, Civil Action No. 2:15-cv-1563-JRG (E.D. Tex. Oct. 30, 2015) (Document 7); *Whirlpool Corporation v. JJ Wholesale Group Inc. d/b/a Bob's Filters and Joseph Spira*, Civil Action No. 2:15-cv-1565-JRG (E.D. Tex. Nov. 12, 2015) (Document 11); *Whirlpool Corporation v. Spectacular Products and William Long*, Civil Action No. 2:15-cv-86 consolidated with 2:15-cv-2103 (E.D. Tex. Apr. 6, 2016)

(Document 20); *Whirlpool Corporation v. Dilmen, LLC d/b/a Coral Premium Water Filters and Huseyin Dilmen*, Civil Action No. 2:15-cv-1722 consolidated with 2:15-cv-2103 (E.D. Tex. Apr. 6, 2016) (Document 17); *Whirlpool Corporation v. Radiant Marketing, LLC d/b/a Clear Sip Water Filters*, Civil Action No. 2:15-cv-2101 consolidated with 2:15-cv-02103-JRG (E.D. Tex. Apr. 14, 2016) (Document 23); *Whirlpool Corporation v. Purenex, Inc.*, Civil Action No. 2:16-cv-028 consolidated with 2:15-cv-02103-JRG (E.D. Tex. Apr. 22, 2016) (Document 32); *Whirlpool Corporation v. iSpring Water Systems, LLC d/b/a 123Filter.com*, Civil Action No. 2:16-cv-107 consolidated with 2:15-cv-02103-JRG (E.D. Tex. May 6, 2016) (Document 41-2); *Whirlpool Corporation v. Craft Appliances, Inc. and Brian Craft*, Civil Action No. 2:16-cv-084 consolidated with 2:15-cv-02103-JRG (E.D. Tex. May 17, 2016) (Document 51); *Whirlpool Corporation v. Compatible Parts, LLC*, Civil Action No. 2:16-cv-445 (E.D. Tex. June 22, 2016) (Document 9); *Whirlpool Corporation v. A&M Distribution, LLC, Aymeric Monello and Megan Grant,* Civil Action No. 2:16-cv-106 (E.D. Tex. July 20, 2016) (Document 8); *Whirlpool Corporation v. DG Enterprises, LLC d/b/a Splash Filters,* Civil Action No. 2:16-cv-109 (E.D. Tex. July 15 2016) (Document 8); *Whirlpool Corporation v. PS Newby, LLC d/b/a Sylvia Water Purification,* Civil Action No. 2:16-cv-137 consolidated with 2:16-cv-565 (E.D. Tex. July 26, 2016) (Document 7); *Whirlpool Corporation v. Arclyte Technologies, Inc.,* Civil Action No. 2:16-cv-138 (E.D. Tex. July 14, 2016) (Document 8); *Whirlpool Corporation v. Pricebreak, Inc.,* Civil Action No. 2:16-cv-416 consolidated with 2:16-cv-565 (E.D. Tex. July 26, 2016) (Document 7); *Whirlpool Corporation v. iSave.com, Inc.,* Civil Action No. 2:16-cv-418

(E.D. Tex. Aug. 4, 2016) (Document 7); *Whirlpool Corporation v. Crystal Rose Trading, Inc. d/b/a UltimatePurification USA,* Civil Action No. 2:16-cv-560 (E.D. Tex. Aug. 8, 2016) (Document 7); *Whirlpool Corporation v. Woodside Distributors, Inc.,* Civil Action No. 2:16-cv-565 (E.D. Tex. July 26, 2016) (Document 7); *Whirlpool Corporation v. Blue Grizzly Supply, Inc.,* Civil Action No. 2:16-cv-585 consolidated with 2:16-cv-565 (E.D. Tex. Aug. 8, 2016) (Document 10); *Whirlpool Corporation v. Odoga Enterprises,* Civil Action No. 2:16-cv-685 consolidated with 2:16-cv-565 (E.D. Tex. July 26, 2016) (Document 7); *Whirlpool Corporation v. Enow Wholesale, Inc.,* Civil Action No. 2:16-cv-737 (E.D. Tex. Apr. 12, 2017) (Document 24); *Whirlpool Corporation v. Brixton Holdings, LLC,* Civil Action No. 2:16-cv-822 (E.D. Tex. Nov. 4, 2016) (Document 9); *Whirlpool Corporation v. AWP Group, Inc. d/b/a Water Filters Fast,* Civil Action No. 2:16-cv-988 (E.D. Tex. Jan. 31, 2017) (Document 16); *Whirlpool Corporation v. Pavel Water Filtration, Inc. and Henry H. Pavel*, Civil Action No. 2:16-cv-146 consolidated with 2:15-cv-02103 (E.D. Tex. Jan. 27, 2017) (Document 143); and *Whirlpool Corporation v. Tianjin Jinghai Yunda Industry and Trade Co., Ltd.*, Civil Action No. 2:16-cv-229 consolidated with 2:15-cv-2103 (E.D. Tex. Feb. 27, 2017) (Document 146).

22.     In violation of 35 U.S.C. § 271, Defendant directly infringes one or more claims of the '894 patent, including but not limited to at least claim 1 by making, using, selling and/or offering to sell in the United States or importing into the United States its infringing filters, including but not limited to Model Nos. WF537 and WF710, which include an end piece for operatively engaging a head assembly, the head assembly comprising one or more valves, for the treatment and control of fluid passing through the

head assembly, said end piece comprising (a) an end piece wall; (b) an inlet fitting having a cam surface, said inlet fitting having a longitudinal axis; (c) an outlet fitting; and (d) a protrusion having a longitudinal axis; wherein said inlet fitting, said outlet fitting, and said protrusion extend from said end piece wall. Accordingly, Defendant literally infringes one or more claims of the '894 patent or does so under the doctrine of equivalents.

23.     In addition, Defendant directly infringes at least claim 4 by making, using, selling and/or offering to sell in the United States or importing into the United States its infringing filters, including but not limited to Model Nos. WF537 and WF710, which include a cartridge for operatively engaging a head assembly, the head assembly comprising one or more valves, for the treatment and control of fluid passing through the head assembly, said cartridge comprising (a) an end piece wall; (b) an inlet fitting having a cam surface, said inlet fitting having a longitudinal axis; (c) an outlet fitting having a cam surface, said outlet fitting having a longitudinal axis; and (d) a protrusion having a longitudinal axis and positioned between said inlet fitting and said outlet fitting; wherein said inlet fitting, said outlet fitting, and said protrusion extend from said end piece wall; and a cartridge housing having a first end, a closed second end, and a longitudinal axis extending there between; wherein said end piece wall is connected to said first end of said cartridge housing, and wherein a portion of said cam surface of said inlet fitting is vectored from at least one of said longitudinal axis of said outlet fitting, and said longitudinal axis of said cartridge housing, and wherein a portion of said cam surface of said outlet fitting is vectored from at least one of said longitudinal axis of said outlet

fitting, and said longitudinal axis of said cartridge housing. Accordingly, Defendant literally infringes one or more claims of the '894 patent or does so under the doctrine of equivalents.

24.     Defendant will continue to infringe one or more claims of the '894 patent unless enjoined by this Court.  As a direct and proximate result of Defendant's direct infringement of the '894 patent, Whirlpool has been and continues to be damaged.

25.     Defendant indirectly infringes, through induced and/or contributory infringement, the '894 patent.  On information and belief, Defendant had prior knowledge of the '894 patent, such as through Whirlpool's marking of Filter 1 and 3 products and Defendant's procurement of its infringing WF537 and WF710 refrigerator filters.

26.     Despite Defendant's notice of the '894 patent, Defendant continues to make, use, sell and/or offer to sell and provide installation, operational support, and instructions for infringing filters, including with the knowledge or willful blindness that its conduct will induce Defendant customers to infringe the '894 patent, including advertising its infringing filters as replacements for Whirlpool filters.  Through such activities, Defendant specifically intends that its customers directly infringe the '894 patent.

27.     On information and belief, Defendant is contributorily infringing and will continue to contributorily infringe one or more claims of the '894 patent for the following reasons.  On information and belief, Defendant had prior knowledge of the '894 patent, for instance, due to Whirlpool's marking of Filter 1 and 3 products and Defendant's

procurement of its infringing products. Defendant provides to its customers, the direct infringers, the replacement filters, such as the WF537 and WF710 filters, that lack substantial non-infringing uses and that lead to infringement when installed into refrigerators' water filter assemblies. These infringing components are a material part of the installation of a replacement filter into the refrigerator's water filter assembly, whose water filtering system would not function properly without them.

28. On information and belief, Defendant's infringement occurred with knowledge of the '894 patent and thus has been and will continue to be willful and deliberate. Whirlpool Filter 1 and 3 products have been marked to give competitors notice of the '894 patent. On information and belief, Defendant sought to copy Whirlpool's patented Filter 1 and 3 designs. Defendant's egregious conduct constitutes willful and deliberate infringement, which entitles Whirlpool to enhanced damages under 35 U.S.C. § 285.

## FACTS AND ALLEGATIONS COMMON TO COUNTS II-VI

29. Whirlpool repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

30. Whirlpool Corporation is a leading global manufacturer and highly regarded appliance company, making and selling many home appliances and accessories including, most notably for the instant matter, refrigerators and related accessories such as refrigerator water filters under the Whirlpool® brand, as well as under the KitchenAid®, Maytag® and EveryDrop® brands (collectively "the Marks").

31.     As a result of extensive advertising and wide distribution of its products by Whirlpool Corporation and by third party retailers and distributors for home appliances, parts and accessories, each of the Marks is favorably recognized and relied upon by the relevant trade and consuming public as indicating high quality goods originating exclusively from a single source.  The Marks are immediately known to consumers nationwide and convey a substantial amount of goodwill.

**The Whirlpool® Brand.**

32.     The Whirlpool® brand enjoys a long history of use and a reputation as an indicator of high quality goods.  The Whirlpool® mark has been used since at least as early as 1906, and in connection with refrigerators since at least as early as 1955.

33.     Under the Whirlpool® brand, Whirlpool makes and sells (and/or licenses others to make and sell) refrigerators and related accessories bearing the Whirlpool® marks, which are protected under common law, and have also been protected with at least the following federal trademark registrations ("Whirlpool Registrations"):

| MARK | REGISTRATION NO. | RELEVANT GOODS |
|---|---|---|
| WHIRLPOOL (word mark) | Reg. No. 4,983,312 | Water filtration and purification units and replacement cartridges and filters therefor for refrigerators |
|  | Reg. No. 1,251,511 | Refrigerators |

| (design mark) | | |
|---|---|---|
| WHIRLPOOL (word mark) | Reg. No. 1,670,524 | Refrigerators and freezers |
| WHIRLPOOL (word mark) | Reg. No. 937,550 | Refrigerators |
| WHIRLPOOL (word mark) | Reg. No. 626,550 | Refrigerators |

34.     Pursuant to 15 U.S.C. §§ 1065 and 1115(b), the Registration Nos. 1,251,511; 1,670,524; 937,550 and 626,550 have become "incontestable," and therefore serve as conclusive evidence of Whirlpool Properties Inc.'s ownership of the marks and its exclusive right to use (or license) the marks in connection with the goods listed in the registrations.

**The KitchenAid® Brand.**

35.     The KitchenAid® brand also enjoys an extraordinary reputation and substantial goodwill among consumers.  It has been used in connection with various kitchen appliances, including refrigerators, since at least as early as 1969, as shown below in stylized form:

13

# KitchenAid

36.     Under the KitchenAid® brand, Whirlpool makes and sells (and/or licenses others to make and sell) refrigerators and related accessories bearing the KitchenAid® marks, which are protected under common law, and have been protected with at least the following federal trademark registrations ("KitchenAid Registrations"):

| MARK | REGISTRATION NO. | RELEVANT GOODS |
|---|---|---|
| KITCHENAID (word mark) | Reg. No. 2,520,284 | Refrigerators; water supply units for dispensing cold water and ice from refrigerators |
| **KitchenAid** (design mark) | Reg. No. 2,520,285 | Refrigerators; water supply units for dispensing cold water and ice from refrigerators |
| KITCHENAID (word mark) | Reg. No. 1,585,507 | Refrigerators |

37.     Pursuant to 15 U.S.C. §§ 1065 and 1115(b), the Registration Nos. 2,520,284; 2,520,285 and 1,585,507 have become "incontestable," and therefore serve as conclusive evidence of Whirlpool Properties Inc.'s ownership of the marks and its exclusive right to use (or license) the marks in connection with the goods listed in the registrations.

**The Maytag® Brand.**

38.     Likewise, the Maytag® brand is widely recognized and enjoys substantial goodwill.   The Maytag® brand has been used in connection with various household appliances since 1907, including on the Puriclean® refrigerator water filters since at least as early as 1998.

39.     Under the Maytag® brand, Whirlpool makes and sells (and/or licenses others to make and sell) refrigerators and related accessories bearing the Maytag® and/or Puriclean® marks, which are protected under common law, and have been protected with at least the following federal trademark registrations ("Maytag Registrations"):

| MARK | REGISTRATION NO. | RELEVANT GOODS AND SERVICES |
|------|------------------|------------------------------|
| MAYTAG (word mark) | Reg. No. 868,637 | Dishwashers and food waste disposers |
| MAYTAG (word mark) | Reg. No. 2,638,631 | Appliance installation, maintenance, and repair services |
|  (design mark) | Reg. No. 4,210,316 | Refrigerators |
| PURICLEAN (word mark) | Reg. No. 2,258,041 | Water filters and water filter cartridges for use with refrigerator ice makers and water dispensers |

|  |  |  |
|---|---|---|

40.     Pursuant to 15 U.S.C. §§ 1065 and 1115(b), the Registration Nos. 868,637; 2,638,631; and 2,258,041 have become "incontestable," and therefore serve as conclusive evidence of Maytag Properties LLC's ownership of the marks and its exclusive right to use (or license) the marks in connection with the goods listed in the registrations.

### The EveryDrop® Brand.

41.     In addition to the Whirlpool®, KitchenAid®, and Maytag® household names, Whirlpool has been selling refrigerator water filters under the EveryDrop® brand since at least as early as 2013.

42.     Under the EveryDrop® brand, Whirlpool makes and sells (and/or licenses others to make and sell) refrigerator water filters bearing the EveryDrop® marks, which are protected under common law, and have been protected with at least the following federal trademark registrations ("EveryDrop Registrations"):

| MARK | REGISTRATION NO. | RELEVANT GOODS |
|---|---|---|
| EVERYDROP  (word mark) | Reg. No. 5,232,741 | Refrigerator water filters |
|  (design mark) | Reg. No. 4,679,632 | Refrigerator water filters |

16

43.     Photographs that are true and accurate representations of the EveryDrop®

refrigerator water filters, which also bear the WHIRLPOOL®, MAYTAG®, and

KITCHENAID® marks, are shown below:







Case 3:17-cv-00601-FDW-DCK   Document 1   Filed 10/06/17   Page 18 of 33

**Defendant's Unlawful Activities**.

44.    Defendant is using the Marks to advertise and promote water filters, without Whirlpool's consent, including offering for sale and/or selling products bearing the Whirlpool® and/or KitchenAid® trademarks in packaging and product labels. Photographs that are true and accurate representations of the infringing Aqua Fresh® filter sold by Defendant and bearing the Whirlpool® and KitchenAid ® trademarks are attached hereto as Exhibit B.   Defendant's unauthorized use of the Marks is likely to cause confusion, deception, and mistake among consumers and the trade as to the source, approval, or sponsorship of refrigerator water filters offered for sale and sold by Defendant.

45.    On information and belief, without Plaintiffs' authorization, Defendant is using the Marks as metadata in order to direct consumers to its websites.

46.    In addition, Defendant is using the Marks in sponsored advertisements on the internet, for instance on Facebook, that when clicked redirect the consumer to the Defendant website for a page where infringing water filters, such as the Aqua Fresh® filters, are sold.

47.    Defendant intentionally uses the Marks in product listings on its website, and in numerous instances the listing titles begin with one or more of the Marks and/or the listing includes a photo of a genuine Whirlpool product for a listing that links to Defendant's products.

48.    When product listings begin with at least one of the Marks, they are likely to cause initial interest confusion.  When the consumer clicks on the product listing with

the Mark, he or she is directed to a place within Defendant's website that promotes a different water filter. The re-directing to a different product is misleading and deceptive; it is done with the intention of creating the impression that the products sold on Defendant Defendant's website originated from Whirlpool, when in fact they did not.

49. By way of non-limiting example, the Defendant website contains a product listing for "Whirlpool EDR3RXD1 EveryDrop Fridge Water Filter 3", which is a Whirlpool Filter 3 model. The listing features an image of a genuine Whirlpool EveryDrop® Filter 3, as shown here:



50. When a consumer clicks on the item, however, the consumer is redirected to a page where the infringing Aqua Fresh WF710 filter is sold, as shown here:



51.     Similarly, the Defendant website contains a listing for "Whirlpool EDR1RXD1 EveryDrop Water Filter 1", which is a Whirlpool Filter 1 model.  The listing features an image of a genuine Whirlpool EveryDrop Filter 1, as shown here:



52. When a consumer clicks on the item, however, the consumer is redirected to a page where the infringing Aqua Fresh WF537 filter is sold, as shown here:



53. Without authorization from Whirlpool, Defendant is using the Marks in U.S. commerce on refrigerator water filters and in connection with the advertising, promotion, sale, and distribution of such water filters to consumers nationwide, including to consumers in the Western District of North Carolina.

54. Defendant's acts have caused, and will continue to cause, damage to Whirlpool and jeopardize the entire goodwill symbolized by the Marks, including its rights acquired under common law, causing immediate, serious, and irreparable injury to Whirlpool for which Whirlpool does not have an adequate remedy at law.

55. On information and belief, the water filters that are advertised, promoted, sold, and distributed by Defendant are intended to be, and are in fact, targeted towards a substantial segment of the public that has long been familiar with Whirlpool's appliances and accessories offered under the Marks.

56. Indeed, the water filters sold and distributed by Defendant directly compete with the water filters sold by Whirlpool under the Marks.

57. By way of example, Defendant has falsely described its competing Water Sentinel® filter by using an image of a Maytag® filter in its promotion of the competing Water Sentinel® filter (available at https://www.filtersfast.com/P-Water-Sentinel-WSM-1-UKF7003AXX-Refrigerator-Water-Filter.asp), as shown below:



58. On information and belief, Defendant sells water filters, such as under the Aqua Fresh® and Water Sentinel® brands, which are inferior to Whirlpool's water filters in terms of their quality.

59. Defendant engaged in the foregoing conduct to trade off of and usurp for itself the value of the Marks and the goodwill long associated with them, in order to sell the products of third parties as well as its own products, including filters that infringe the '894 patent, to unsuspecting consumers.

60. Because Whirlpool has no control over the nature of Defendant's goods, the reputation and goodwill associated with the Marks, including those rights acquired under common law, are jeopardized and damaged by Defendant's conduct and will continue to be jeopardized and damaged for so long as Defendant continues to improperly use the Marks.

61. To the extent that the quality of the water filters being passed off by Defendant as having originated from Whirlpool are inferior to the quality standards set by Whirlpool, consumers will be damaged in the event such lower quality filters result in poor performance, product breakdowns, and/or property damage.

62. Defendant's unauthorized use of the Marks is likely to cause instances of actual confusion, to cause mistake, and/or to deceive consumers into believing that the water filters sold by Defendant originated from Whirlpool, or are in some way sponsored by, endorsed by, connected to, or affiliated with Whirlpool or Whirlpool's Whirlpool®, KitchenAid®, Maytag®, Puriclean® or EveryDrop® branded goods.

63. Defendant's unauthorized and willful advertising, promotion, sales, and distribution of water filters bearing the Whirlpool® and KitchenAid® Marks violates Whirlpool's exclusive right to use those marks for such goods, afforded to Whirlpool by virtue of its Whirlpool Registrations and KitchenAid Registrations, as well as Whirlpool's long-established common law rights in those marks based on nationwide sales of goods bearing the marks.

64. Defendant's unauthorized and willful deceptive use of the Marks in advertising and promotion of refrigerator water filters that do not originate from

Whirlpool violates Whirlpool's exclusive right to use the Marks for water filters afforded to Whirlpool by virtue of its Whirlpool Registrations, KitchenAid Registrations, Maytag Registrations, and EveryDrop Registrations, as well as Whirlpool's long-established common law rights in the Marks based on nationwide sales of goods bearing the marks.

65.     On information and belief, in engaging in the above-described conduct, Defendant has willfully and knowingly infringed the Marks since at least October 4, 2016.

66.     The acts of Defendant complained of herein have irreparably harmed and will continue to irreparably harm Whirlpool.

67.     Defendant's conduct as described herein makes this an exceptional case.

## COUNT II
## INFRINGEMENT OF REGISTERED TRADEMARKS

68.     Whirlpool repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

69.     Defendant's use of the Marks, without Whirlpool's consent, constitutes infringement of U.S. Trademark Registration Nos. 4,983,312; 1,251,511; 1,670,524; 937,550 and 626,550 ("the Whirlpool Registrations"), Nos. 5,232,741 and 4,679,632 ("the EveryDrop Registrations"), Nos. 2,520,284; 2,520,285 and 1,585,507 ("the KitchenAid Registrations"), and Nos. 868,637; 2,638,631; 4,210,316 and 2,258,041 ("the Maytag Registrations") in violation of 15 U.S.C. § 1114 in that, among other things, Defendant's unauthorized use of the Marks is likely to cause consumer confusion, deception, and mistake among consumers and the trade as to the affiliation, connection, or association of Defendant and/or the products it sells with Whirlpool, and/or as to the

origin, sponsorship, or approval by Whirlpool of the goods advertised, promoted, sold, and distributed by Defendant.

70.     Defendant's acts have caused, and will continue to cause, damage to Whirlpool and jeopardize the entire goodwill symbolized by the Marks, causing immediate, serious, and irreparable injury to Whirlpool for which Whirlpool does not have an adequate remedy at law.

**COUNT III**
**FALSE DESIGNATION OF ORIGIN AND TRADEMAK INFRINGEMENT**
**UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)**

71.     Whirlpool repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

72.     Defendant's use in commerce of the Marks in connection with refrigerator water filters is a false designation of origin and an infringement of Whirlpool's nationwide common law rights in the Marks, because such use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and/or the products it sells with Whirlpool, and/or as to the origin, sponsorship or approval by Whirlpool of the goods advertised, promoted, sold, and distributed by Defendant.

73.     Defendant has used in commerce in connection with the sale of refrigerator water filters false designations of origin and false and misleading descriptions and representations, including the Marks, which tend to falsely describe the origin, sponsorship, association, or approval by Whirlpool of the water filters sold by Defendant.

74. Defendant's acts have caused, and will continue to cause, damage to Whirlpool and jeopardize the entire goodwill symbolized by the Marks, causing immediate, serious, and irreparable injury to Whirlpool for which Whirlpool does not have an adequate remedy at law.

**COUNT IV**
**FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)**

75. Whirlpool repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

76. Defendant has engaged in the unauthorized use of the Marks on and in connection with advertising and promotional materials that falsely represent the quality of the water filters actually sold. For example, Defendant's use of an image of a genuine Maytag® water filter in a product listing for a Water Sentinel® brand filter falsely suggests that the quality of the Water Sentinel filter is the same as the Maytag filter.

77. Defendant has engaged in the unauthorized use of the Marks in sponsored product listings that misrepresent the goods actually being sold, including sponsored links available on Facebook that redirect the consumer to product listings for water filters sold by Defendant that do not originate from Whirlpool.

78. These statements and unauthorized uses of images of Whirlpool's filters actually deceive, and/or have a tendency to deceive, a substantial segment of Whirlpool's customers and potential customers. This deception is material in that it concerns the quality or characteristics of products sold by Defendant and is likely to influence the purchasing decisions of consumers.

79. Defendant's false and misleading advertising statements injure both consumers and Whirlpool.

80. Defendant's acts have caused, and will continue to cause, damage to Whirlpool and jeopardize the entire reputation and goodwill symbolized by the Marks, causing immediate, serious, and irreparable injury to Whirlpool for which Whirlpool does not have an adequate remedy at law.

81. Furthermore, based on information and belief, Defendant's conduct as complained herein was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT

82. Whirlpool repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

83. Whirlpool has used, and continues to use, the Marks for refrigerators and refrigerator water filters in commerce within the state of North Carolina, and has developed substantial consumer recognition for the Marks within the state. This consistent and continuous use of the Marks in commerce resulting in consumer recognition renders the Marks valid and protectable marks entitled to common law rights in the state of North Carolina.

84. Defendant's use of the Marks, without Whirlpool's consent, constitutes infringement of Whirlpool's North Carolina common law trademark rights because, among other things, Defendant's unauthorized use of the Marks in the same geographic

area as Whirlpool's use is likely to cause confusion, deception, and mistake among consumers and the trade as to the source, approval, or sponsorship of Defendant's refrigerator water filters.

85.     Defendant's acts have caused, and will continue to cause, damage to Whirlpool and jeopardize the entire goodwill symbolized by the Marks, causing immediate, serious, and irreparable injury to Whirlpool for which Whirlpool does not have an adequate remedy at law.

## COUNT VI
## UNFAIR OR DECEPTIVE TRADE PRACTICES UNDER N.C.G.S.A. § 75-1.1:

86.     Whirlpool repeats and realleges as if fully set forth herein the facts and allegations of all of the preceding paragraphs.

87.     Defendant has engaged in unauthorized and willful advertising, promotion, sales, and distribution of water filters bearing the Marks, including Defendant's use of the Marks in sponsored links and metadata in a manner that falsely represents Defendant's goods, the unauthorized use of the Marks in product listings for goods sold by Defendant, and the unauthorized use of images of genuine Whirlpool products in product listings for goods sold by Defendant throughout the state of North Carolina and throughout the nation.

88.     Defendant's actions have the tendency to deceive consumers in a way that is substantially injurious to consumers.

89.     Defendant's manner of use of the Marks as pled above and herein constitutes an unfair method of competition in commerce, and/or an unfair and deceptive act or practice which affects commerce, and is therefore unlawful.

90.     Defendant's acts have caused, and will continue to cause, damage to Whirlpool and jeopardize the entire goodwill symbolized by the Marks, causing immediate, serious, and irreparable injury to Whirlpool for which Whirlpool does not have an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Whirlpool prays for a judgment against Defendant as follows:

A.     That the Court enter a preliminary and permanent injunction preventing Defendant and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '894 patent;

B.     That the Court award damages for the willful and deliberate infringement of the '894 patent to which Whirlpool is entitled, including enhanced damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285;

C.     That the Court enter a judgment that the '894 patent is not invalid;

D.     That the Court enter a judgment that the '894 patent is enforceable;

E.     That the Court enter a preliminary and permanent injunction immediately restraining Defendant, its officers, agents, servants, employees, licensees, attorneys and all other persons in active concert or participation with it from:

(1) manufacturing, having manufactured, advertising, promoting, offering for sale, selling, importing, exporting, or distributing water filter cartridges, or any products related thereto, bearing the marks "Whirlpool," "EveryDrop," "KitchenAid," "Maytag" and/or "Puriclean" or anything confusingly similar thereto;

(2) using "Whirlpool," "EveryDrop," "KitchenAid," "Maytag" and/or "Puriclean" or any other mark confusingly similar thereto in any manner likely to confuse or deceive consumers in connection with the advertising, promotion, sale, or distribution of refrigerator water filters, or any products related thereto;

(3) engaging in any other act that is likely to cause the mistaken belief that goods sold by Defendant originate from or are in any way sponsored by, endorsed by, connected to, associated with, or affiliated with Whirlpool; and from

(4) otherwise competing unfairly with Whirlpool in any manner.

F. For an order directing Defendant to file with the Court and serve upon Whirlpool within thirty (30) days after service of the injunction on Defendant, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

G. That pursuant to 15 U.S.C. § 1117, the Court direct payment by Defendant to Whirlpool for damages suffered by Whirlpool by virtue of Defendant's acts

31

pleaded herein, trebled; all profits that Defendant has derived from using the Marks; and costs of the action;

H.      That the Court award costs and attorneys' fees, and prejudgment interest to the fullest extent provided for by 15 U.S.C. § 1117 and N.C.G.S.A § 75-16.1;

I.      That the Court award punitive damages to the fullest extent available under common law;

J.      That the Court award interest on the damages; and

K.      For any and all such other relief as this Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues appropriately triable by a jury.

*[Signature page attached]*

Respectfully submitted,

s/Craig N. Killen
Craig N. Killen
NC Bar No. 43980
Nelson Mullins Riley & Scarborough, LLP
301 South College Street, 23rd Floor
Charlotte, North Carolina 28202
Telephone: (704) 417-3000
Facsimile: (704) 377-4814

Jeffrey D. Harty  (IA AT0003357)
(*pro hac vice* forthcoming)
Allison E. Kerndt (IA AT0002923)
(*pro hac vice* forthcoming)
David T. Bower (IA AT0009246)
(*pro hac vice* forthcoming)
NYEMASTER GOODE, P.C.
700 Walnut Street, Ste. 1600
Des Moines, IA 50309-3899
Telephone: (515) 283-8038
Facsimile:  (515) 283-3108
Email:    jharty@nyemaster.com
             akerndt@nyemaster.com
             dbower@nyemaster.com

***Attorneys for Plaintiffs***
**WHIRLPOOL PROPERTIES, INC.,**
**WHIRLPOOL CORPORATION, AND**
**MAYTAG PROPERTIES, LLC**

33