UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| WHIRLPOOL PROPERTIES, INC., WHIRLPOOL CORPORATION, and MAYTAG PROPERTIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FILTERS FAST, LLC<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:17-cv-601-FDW-DCK |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR AN ADVERSE INFERENCE INSTRUCTION AGAINST
DEFENDANT FILTERS FAST FOR SPOLIATION**

## INTRODUCTION

This lawsuit is about Defendant's systemic pattern and practice of making deceptive and misleading communications to consumers meant to trick them into purchasing lower quality filters that generate higher profits. Whirlpool first threatened litigation against Defendant as a result of these practices in October 2016, and the parties have been engaged in litigation since October 2017. Yet, even during the pendency of this lawsuit, Defendant has knowingly destroyed or failed to preserve evidence of its marketing communications on its website and via product data feeds, and now attempts to use the absence of this evidence to its advantage, characterizing the evidence that has survived as "isolated" or as merely "examples." The question here is not whether Defendant has engaged in spoliation; its employees have admitted that it has. Rather, the issue for this Court is to enter the appropriate sanction necessary to avoid injustice: an instruction permitting the jury to draw an adverse inference against Defendant due to Defendant's spoliation of evidence.[1]

## BACKGROUND

Defendant, an online retailer of water filters, sells both Whirlpool Filters and lower quality, lower priced Non-Genuine Products made from a number of manufacturers.[2] Defendant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For years Defendant has engaged in deceptive misleading, and unfair

---

[1] Whirlpool's proposed adverse inference instruction is attached as Exhibit A. Whirlpool is also concurrently filing a motion in limine seeking to preclude Defendant from making arguments at trial that seek to capitalize on Defendant's spoliation of evidence. The parties met and conferred regarding this issue on February 14, 2019, and Defendant resists this motion.

[2] Defined terms retain the meaning assigned to them in Whirlpool's Summary Judgment Opposition Brief, ECF No. 93.

practices designed to confuse consumers as to the source, sponsorship, endorsement, or quality of the higher-profit Non-Genuine Products to promote their sales.

Filters Fast engages in these deceptive, misleading, and unfair practices across multiple marketing channels. First and foremost is Defendant's website, where a large portion of Defendant's sales are made. Defendant also engages in deceptive, misleading, and unfair sales tactics using advertisements placed through Google, Bing, Criteo, and other vendors, and by using "Shopping" listings on Google, Bing, and retailer platforms such as Amazon, eBay, Sears, and Walmart. Defendant submits documents called "data feeds" to these advertising and shopping vendors. These data feeds dictate the content presented to the consumers and product listings that result in sales. Both the contents of the website and of the data feeds (and thus, the resulting listings), are created and controlled by Defendant. However, despite the clear relevance to this action, Defendant has destroyed or failed to retain all prior versions of its website and all data feeds.

On October 4, 2016, Whirlpool informed Defendant that its use of Whirlpool's trademarks on product listings for Non-Genuine Products was deceptive, misleading, and likely to cause confusion. (Ex. B) Whirlpool attached screenshots of Defendant's misleading website listings and threatened legal action in the event Defendant did not change its misleading website listings. (*Id.*) On November 22, 2016, Whirlpool informed Defendant that further investigation revealed that Defendant's website continued to use Whirlpool's trademarks in a deceptive and misleading fashion.[3] (Ex. C) On February 28, 2017, Whirlpool sent Defendant a ***third*** cease and

---

3      In Whirlpool's second cease and desist letter, Whirlpool thanked Defendant for making changes requested to the specific web pages highlighted in Whirlpool's October 4, 2016, letter. (Ex. C) Yet, Whirlpool also stated that Filters Fast's continued practices on its website were "confusing and likely to mislead consumers." (Ex. C)

desist letter. (Ex. D) Whirlpool informed Defendant that it had discovered "many additional instances of confusing use" and that Whirlpool was "beginning to believe this was a pattern, and that Filters Fast is intentionally misusing our client's marks for its own financial gain." (*Id.*) In addition to highlighting numerous examples of deceptive practice on Defendant's website, Whirlpool's letter called attention to Defendant's confusing and misleading practices on eBay, Walmart, Sears.com, and advertisements placed on search engines. (*Id.*)

Whirlpool filed this litigation on October 6, 2017. The claims alleged in the Complaint are premised upon the same patterns and practices highlighted both in (1) Whirlpool's three pre-suit notice letters, and (2) the cease-and-desist letters Defendant received from other manufacturers during this same time period. Specifically, Whirlpool alleged that Defendant used Whirlpool's trademarks and promoted the sale of Non-Genuine Products in a manner that was deceptive, misleading, and likely to cause confusion, both on Defendant's website and in sponsored internet advertisements. (Compl. ¶¶. 44-67, ECF No. 1)

To be clear, since at least October 2016,[4] Defendant was aware that the content of its website and of the data feeds that it submitted to third party advertising and shopping platforms was the subject of claims of deceptive and unlawful conduct by numerous manufacturers. Yet, it is undisputed that at ***no point*** did Defendant take any effort to preserve this critical information, even ***after such information had been requested by Whirlpool in this litigation.***[5]

---

[4] Since 2016, Filters Fast has received cease and desist letters or other legal notices from manufacturers including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, arising from the same marketing practices at issue in this case. During that same time, Defendant has received numerous warnings of trademark infringement and/or misleading product listing from vendors such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[5] Whirlpool served numerous requests for production and interrogatories for which Defendant's prior website pages and data feeds were responsive. *See* Exs. E, F, and G.

On October 3, 2018, nearly one year after this lawsuit was filed, ▮

▮

▮ (Ex. H) ▮

▮

▮. (*Id.*) ▮

▮

▮ (Ex. I) ▮

▮

▮. (Ex. J)  In email correspondence, ▮

▮ (Ex. K)  Filters Fast's blatant disregard of its duty to preserve this critical, highly relevant information is troubling.

Whirlpool has, at various times prior to and during this lawsuit, captured screenshots of deceptive and misleading product listings on Defendant's website and on advertisements and product listings posted on third-party websites; since as early as 2016, Whirlpool has shared those screenshots with Defendant and produced those screenshots in discovery.  Whirlpool's captures, however, do not and could not be expected to cover every page of Defendant's website offering the Non-Genuine Products for sale, <u>and</u> every advertisement or "Shopping" listing for the Non-Genuine Products on all third party websites such as Google, Bing, Facebook, Amazon, eBay, Sears, and Walmart, for the continuous period of time that is at issue in this litigation.  The

5

evolution of the product listings over time were in the Defendant's control and custody, yet Defendant failed to take the necessary steps to preserve this relevant documentation—even after the Complaint was filed. Indeed, Defendant alone had the ability to change its website and data feeds instantaneously, without anyone (let alone Whirlpool) knowing. Defendant used this ability to clandestinely change its website to deceive consumers.

By way of example,  (Ex. L)

Rather than provide Whirlpool with copies of the prior versions of its website pages and data feeds from its internal records as requested in discovery, Defendant produced a handful of screenshots of images from the Wayback Machine, an internet "archive" website maintained by a third party. (*See* Ex. M) Whirlpool expects Defendant to label the clear and overwhelming evidence of Defendant's conduct as "isolated examples." However, the records of Defendant's website or data feeds, which Defendant destroyed or failed to preserve, likely support Whirlpool's claims, particularly in view of admissions made by Filters Fast employees and details gleaned from Defendant's internal records.

## ARGUMENT

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A district court possesses the

---

6   The WF710 filter is one of the Non-Genuine Products at issue in this case.

inherent power to sanction a party who "destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation." *King v. Am. Power Conversion Corp.*, 178 F. Appx. 373, 376 (4th Cir. 2006). "A district court enjoys broad discretion to select a fitting response, which should serve the twin purposes of 'leveling the evidentiary playing field and . . . sanctioning the improper conduct.'" *Id.* (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). This broad discretion extends to the ability to enter judgment against a party who commits spoliation. *See, e.g.*, *Silvestri*, 471 F.3d at 593; *King*, 181 F. Appx. at 378-79.

When a party destroys or fails to preserve relevant evidence in reasonably foreseeable litigation, the district court may "permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence." *Vodusek*, 71 F.3d at 156. An adverse-inference jury instruction is appropriate where "the evidence [that a party destroyed or failed to preserve] would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Id.* The party seeking an adverse-inference instruction must show "the [offending] party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Callahan v. Pac. Cycle, Inc.*, No. 17-1739, 2018 WL 6131783, at *8 (4th Cir. Nov. 21, 2018). "Willful conduct" does not require bad faith; rather, "'willful conduct' in this context simply means **not accidental**." *Id.* (emphasis added) (citing *Vodusek*, 71 F.3d at 155); *see also Legacy Data Access, LLC v. MediQuant, Inc.*, No. 3:15-cv-00584, 2017 WL 6001637, at *9–10 (W.D.N.C. Dec. 4, 2017) ("[W]illful conduct is established if the party intended 'to take those actions that caused the evidence's alteration or destruction.'" (quoting *Nucor Corp. v. Bell*, 251 F.R.D. 191, 198 (D.S.C. 2008))).

7

Here, Whirlpool *informed Defendant that it was considering legal action* in October 2016. In other words, Defendant knew or should have known by at least early 2016 that the contents of its website and data feeds used to populate online product listings would be the subject of reasonably foreseeable litigation by Whirlpool. Yet, Defendant did not deviate from its practice—which continues today—of overwriting pages on its website without retaining the content of the prior versions of the pages and overwriting data feeds. Nor did Defendant cease destroying this evidence <u>once Whirlpool filed this lawsuit</u>, even though the Complaint <u>on its face</u> alleged that Defendant's deceptive and misleading communications occurred (1) on Defendant's website; (2) on internet advertisements and product listings. Defendant's conduct was clearly not accidental. Each time Defendant changed a page on its website or re-submitted a product feed—and in doing so, overwrote the previous relevant information—it did so purposefully, pursuant to Defendant's standard practice.

The missing information would indisputably have been relevant at trial and naturally would have been introduced into evidence. Whirlpool's claims in this case largely concern Defendant's marketing practices on its website and on other advertising and shopping listings. Instead of preserving this relevant evidence, Defendant now seeks to benefit from its destruction. Defendant moved for summary judgment on all of Whirlpool's claims on the basis that the evidence captured by Whirlpool regarding Defendant's own website—the evidence of Defendant's conduct that has survived Defendant's spoliation—comprised "isolated incidents, often involving one product or one webpage changed long ago." (Defendant's Summary Judgment Reply Br. ("Def.'s MSJ Reply Br.") at 1, ECF No. 96) Defendant even argued that "[t]he evidence of record is replete with examples of conduct that are limited in both time and scope." (Def.'s MSJ Reply Br. at 6) But to the extent the evidence in the record is "limited" in

"time" or "scope," it is because *Defendant deleted the remainder of the evidence*, which it created and controlled.

This Court has previously found a spoliation instruction to be a warranted sanction for spoliation of evidence where "Defendant used the absence of documents and data, created by [Defendant's agents], to its advantage in its arguments at trial and before trial." *Legacy Data Access*, 2017 WL 6001637, at *10. The interests of justice require similar remediation here. An adverse-inference instruction is necessary to ensure Defendant cannot profit from its willful refusal to preserve, and indeed knowingly destroyed documents and information relevant to Whirlpool's claims.

## CONCLUSION

For the reasons stated above, Whirlpool's motion requesting an adverse inference jury instruction against Defendant for spoliation should be **granted**.

Date: February 19, 2018         */s/ Jeffrey D. Harty*

                              Jeffrey D. Harty (IA AT0003357)
Allison E. Kerndt (IA AT0002923)
David T. Bower (IA AT0009246)
Matthew A. McGuire (IA AT0011932)
Ryan Stefani (IA AT0012387)
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899
Telephone: (515) 283-3100
Facsimile: (515) 283-3108
Email: jharty@nyemaster.com
Email: akerndt@nyemaster.com
Email: dbower@nyemaster.com
Email: mmcguire@nyemaster.com
Email: rstefani@nyemaster.com
PRO HAC VICE ATTORNEYS FOR PLAINTIFFS, WHIRLPOOL PROPERTIES, INC., WHIRLPOOL CORPORATION, AND MAYTAG PROPERTIES, LLC

Craig N. Killen (N.C. Bar No. 43980)
Paul J. Osowski (N.C. Bar No. 23423)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 South College Street, 23rd Floor
Charlotte, NC 28202
Telephone: (704) 417-3000
Facsimile: (704) 337-4814
Email: craig.killen@nelsonmullins.com
Email: paul.osowski@nelsonmullins.com
ATTORNEYS FOR PLAINTIFFS, WHIRLPOOL PROPERTIES, INC., WHIRLPOOL CORPORATION, AND MAYTAG PROPERTIES, LLC

### CERTIFICATION

The undersigned hereby certifies that this Brief in Opposition complies with the requirements of the Case Management Order, ¶ 3(c)(i), in that it does not exceed 3,000 words, excluding the caption, tables, certifications, and signatures.

This the 19th day of February, 2019.

*/s/ Jeffrey D. Harty*