IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| WHIRLPOOL PROPERTIES, INC., WHIRLPOOL CORPORATION, and MAYTAG PROPERTIES, LLC, | Civil Action No.: 3:17-cv-00601-FDW-DCK |
| Plaintiffs, | |
| v. | |
| FILTERS FAST, LLC, | |
| Defendant. | |

## DEFENDANT FILTERS FAST, LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

LEGAL STANDARD..........................................................................................................1

ARGUMENT ......................................................................................................................1

I.  WHIRLPOOL HAS FAILED TO PRESENT SUFFICIENT EVIDENCE TO
PERMIT A REASONABLE JURY TO FIND FOR WHIRLPOOL ON ANY OF
ITS CLAIMS. ............................................................................................................1

    A.  Whirlpool has failed to present sufficient evidence to permit a reasonable jury
to find in its favor on Whirlpool's Lanham Act trademark infringement and
false designation of origin claims. ........................................................................ 1

        1.  In this case, factors (1)-(2) are not relevant to the likelihood-of-
confusion analysis. ....................................................................................... 3

        2.  Whirlpool has failed to present sufficient evidence of Filters Fast's
intent that supports likelihood of confusion................................................. 3

        3.  The *de minimis* evidence of actual confusion presented by
Whirlpool—coupled with the absence of survey evidence—does not
support of finding of likelihood of confusion. ........................................... 4

    B.  Whirlpool has failed to present sufficient evidence to permit a reasonable jury
to find in its favor on Whirlpool's Lanham Act false-advertising claim................ 6

    C.  Whirlpool has failed to present sufficient evidence to permit a reasonable jury
to find in its favor on Whirlpool's common-law trademark-infringement
claim......................................................................................................................... 8

    D.  Whirlpool has failed to present sufficient evidence to permit a reasonable jury
to find in its favor on Whirlpool's claim under the UDTPA. ................................. 8

II.  WHIRLPOOL HAS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT
WOULD PERMIT A REASONABLE JURY TO ALLOCATE WHIRLPOOL'S
CLAIMED DAMAGES TO ANY ALLEGED UNLAWFUL CONDUCT BY
FILTERS FAST. .....................................................................................................10

III.  WHIRLPOOL HAS FAILED TO SUBMIT SUFFICIENT EVIDENCE TO PROVE
THAT IT OWNED A VALID TRADEMARK FOR ITS MODEL NUMBERS. ............11

IV.  WHIRLPOOL IS PRECLUDED FROM OBTAINING DAMAGES ON THE
WSW-5. ..................................................................................................................12

i

V.      WHIRLPOOL HAS FAILED TO PRESENT SUFFICIENT EVIDENCE OF
        ALLEGED CONFUSION AT THE POINT OF PURCHASE. ........................................14

VI.     WHIRLPOOL ADMITS THAT FILTERS FAST'S CURRENT PRODUCT PAGE
        ADVERTISING IS ACCEPTABLE AND DOES NOT CREATE A LIKELIHOOD
        OF CONFUSION ............................................................................................................15

CONCLUSION............................................................................................................................17

ii

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
 466 F.3d 1000 (Fed. Cir. 2006) ........................................................................ 13

*AM General Corp. v. DaimlerChrysler Corp.*,
 311 F.3d 796 (7th Cir. 2002) ........................................................................ 14

*Belk, Inc. v. Meyer Corp.*,
 679 F.3d 146 (4th Cir. 2012) ........................................................................ 9

*Bell South Corp. v. White Directory Publishers, Inc.*,
 42 F. Supp. 2d 598 (M.D.N.C. 1999) ........................................................................ 8

*CareFirst of Md., Inc. v. First Care, P.C.*,
 434 F.3d 263 (4th Cir. 2006) ........................................................................ 5

*Carl v. BernardJcarl.Com*,
 409 F. App'x 628 (4th Cir. 2010) ........................................................................ 15

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,
 492 F.3d 484 (4th Cir. 2007) ........................................................................ 10

*CPC Int'l, Inc. v. Skippy Inc.*,
 214 F.3d 456 (4th Cir. 2000) ........................................................................ 10

*Dotson v. Pfizer, Inc.*,
 558 F.3d 284 (4th Cir. 2009) ........................................................................ 1

*Fernandez v. Haynie*,
 31 F. App'x 816 (4th Cir. 2002) ........................................................................ 14

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
 194 F.3d 505 (4th Cir. 1999) ........................................................................ 9

*Frontrange Solutions USA, Inc. v. Newroad Software, Inc.*,
 505 F. Supp. 2d 821 (D. Colo. 2007) ........................................................................ 3

*Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*,
 618 F.3d 441 (4th Cir. 2010) ........................................................................ 8

*George & Co. LLC v. Imagination Entertainment Ltd.*,
 575 F.3d 383 (4th Cir. 2009) ........................................................................ 3, 5

*Grayson O Co. v. Agadir Int'l LLC*,
 856 F.3d 307 (4th Cir. 2017) ........................................................................ 2

*J.M. Huber Corp. v. Lowery Wellheads, Inc.*,
 778 F.2d 1467 (10th Cir. 1985) ........................................................................ 12

*JL Beverage Co., LLC v. Beam, Inc.*,
 No. 2:11-cv-417, 2018 WL 1863641 (D. Nev. April 18, 2018) ........................................................................ 11

iii

*Lamparello v. Falwell*,
420 F.3d 309 (4th Cir. 2005) ........................................................................ 2, 15

*Lexmark Int'l v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................................................. 7

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
982 F.2d 1400 (9th Cir. 1993) ........................................................................ 16

*Mars, Inc. v. J.M. Smucker Co.*,
No. 1:16-cv-01451, 2017 WL 4323582 (E.D. Va. Sept. 27, 2017) ........................ 5

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
316 U.S. 203 (1942) ........................................................................................... 11

*Official Airline Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir. 1993) ................................................................................ 5

*Petro Stopping Ctrs., L.P. v. James River Petro., Inc.*,
130 F.3d 88 (4th Cir. 1997) ................................................................................. 5

*Polo Fashions, Inc. v. Craftex, Inc.*,
816 F.2d 145 (4th Cir. 1987) .............................................................................. 8

*Price v. City of Charlotte*,
93 F.3d 1241 (4th Cir. 1996) .............................................................................. 1

*Radiance Found., Inc. v. N.A.A.C.P.*,
786 F.3d 316 (4th Cir. 2015) .............................................................................. 4

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ............................................................................................ 1

*Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*,
148 F.3d 417 (4th Cir. 1998) .............................................................................. 4

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
179 F.3d 704 (9th Cir. 1999) ............................................................................ 11

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) ..................................................................... 2, 3, 5

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
839 F.3d 1179 (9th Cir. 2016) .......................................................................... 16

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
330 F. Supp. 2d 668 (E.D. Va. 2004) ................................................................. 7

*The Sports Auth., Inc. v. Prime Hospitality Corp.*,
89 F.3d 955 (2d Cir. 1996) ................................................................................. 6

*Verisign, Inc. v. XYZ.COM LLC*,
848 F.3d 292 (4th Cir. 2017) .......................................................................... 6, 7

*Whirlpool Properties, Inc. v. LG Elecs. U.S.A., Inc.*, No. 1:03-cv-414, 2005 WL
3088339, at *11 (W.D. Mich. Nov. 17, 2005) .................................................. 12

iv

*Yellowbrix, Inc. v. Yellowbrick Solutions, Inc.*,
    181 F. Supp. 2d 575 (E.D.N.C. 2001) ........................................................................... 9

## Statutory Authorities

15 U.S.C. § 1114 ................................................................................................................ 2

15 U.S.C. § 1117 .......................................................................................................... 10, 16

15 U.S.C. § 1125 ............................................................................................................. 2, 7

## Rules and Regulations

Fed. R. Civ. P. 15 ............................................................................................................ 14

Fed. R. Civ. P. 50 .............................................................................................................. 1

## INTRODUCTION

Defendant Filters Fast LLC respectfully moves under Federal Rule of Civil Procedure 50 for Judgment as a Matter of Law. As described herein, Whirlpool has failed to present sufficient evidence for the jury to find in its favor on all counts. Additionally, Whirlpool has failed to demonstrate it is entitled to any damages because it has not satisfied the requirements to prove profits attributable to the infringing conduct. Finally, Whirlpool has admitted that Filters Fast's current advertising practices are acceptable. Therefore, Filters Fast respectfully requests the Court enter an order denying any and all possible injunctive relief relating to the asserted claims.

## LEGAL STANDARD

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). In addition to challenging the entirety of the plaintiff's claim, a Rule 50(a) motion can also challenge the sufficiency of the evidence supporting the plaintiff's requested damages. *See, e.g.*, *Price v. City of Charlotte*, 93 F.3d 1241, 1248-49 (4th Cir. 1996). When ruling on a Rule 50(a) motion, the Court reviews "the record as a whole in the light most favorable to the non-movant." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009).

## ARGUMENT

**I. WHIRLPOOL HAS FAILED TO PRESENT SUFFICIENT EVIDENCE TO PERMIT A REASONABLE JURY TO FIND FOR WHIRLPOOL ON ANY OF ITS CLAIMS.**

    **A. Whirlpool has failed to present sufficient evidence to permit a reasonable jury to find in its favor on Whirlpool's Lanham Act trademark infringement and false designation of origin claims.**

1

Whirlpool's Count I raises a trademark-infringement claim under § 1114(1), and its Count II raises a false-designation-of-origin claim under § 1125(a)(1)(A). The Fourth Circuit has held that each of these claims requires proof of the same elements. *See Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005). To prevail on these claims, a plaintiff must prove:

> (1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (discussing 15 U.S.C. § 1114). In this case, Whirlpool has failed to introduce sufficient evidence that would permit a reasonable jury to conclude that Filters Fast's use of Whirlpool's mark is likely to confuse consumers.

The Fourth Circuit has frequently recited a number of factors that may inform the likelihood of confusion analysis:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Rosetta Stone*, 676 F.3d at 153 (quotation omitted). However, the Court of Appeals has emphasized that "[n]ot all of these factors will be relevant in every trademark dispute." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017) (quotation omitted).

### 1. In this case, factors (1)-(2) are not relevant to the likelihood-of-confusion analysis.

In this case, Filters Fast admits that it has used Whirlpool's marks. But it has not done so in order to "pass off" generic filters as Whirlpool products. Rather, Filters Fast has used the Whirlpool marks to communicate to consumers the compatibility of generic filters, i.e. that certain generic filters work with Whirlpool products. This use of the Whirlpool marks constitutes a classic case of "nominative fair use." *See, e.g.*, *Frontrange Solutions USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d 821, 835 (D. Colo. 2007); *Rosetta Stone*, 676 F.3d at 154.

The first two factors ordinarily considered in the likelihood-of-confusion analysis have little relevance in situations involving referential, non-trademark use. *Rosetta Stone*, 676 F.3d at 154-55. "[I]n the nominative use context, the defendant is not passing off its products under the plaintiff's mark but rather is using plaintiff's mark to refer to plaintiff's own products." *Id.* at 155. Thus, in this context, the strength of the plaintiff's mark and the similarity of the marks used do not reflect consumer confusion. *Id.* Even if this factor is relevant, Whirlpool's own internal documents admit that consumers think their EveryDrop mark is a generic mark (*see* DX394 at 28), and that EveryDrop—despite being used in connection with refrigerator water filters since 2015—still has zero percent unaided brand awareness as recently as July of 2018. *See* DX396 at 13.

### 2. Whirlpool has failed to present sufficient evidence of Filters Fast's intent that supports likelihood of confusion.

The "intent" factor requires "an intent to mislead and to cause consumer confusion." *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) (quotation omitted). "[A]n intent to compete with" the trademark holder does not support a finding of likelihood of confusion. *Id.* at 397-98.

3

Here, Whirlpool alleged that Filters Fast intentionally placed an image of the OEM Whirlpool product on a webpage when the customer would actually receive the WSW-5 compatible. However, Whirlpool has not presented sufficient evidence to show that this act was intending to mislead the consumer. In fact, it was intended to help the consumer identify the product it was replacing because of the massive consumer confusion caused by Whirlpool. As admitted in Whirlpool's own documents, there is a 14% level of general confusion in replacement filter field overall. *See* DX390 at 11 ("14% of consumers are confused by the refrigeration filter shopping experience"). Such general confusion is not actionable. *See Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 324 (4th Cir. 2015) ("[I]t is important to remember that 'trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (citation omitted). This general confusion can be attributed to Whirlpool's rebranding to the EveryDrop filters, which consumers believed was a generic filter. Thus, Whirlpool has failed to present evidence that the intent of using the image was to mislead. Instead, the record makes clear that Filters Fast was intending to aid the consumer in navigating Whirlpool's branding mistakes. In fact, Heather Quinn testified that Filters Fast bought $1.7 million of the Whirlpool OEM filter when it realized Whirlpool's branding decisions would cause consumer confusion. 3/8/2019 Trial Tr.[1] at 132:4-6.

   **3. The *de minimis* evidence of actual confusion presented by Whirlpool—coupled with the absence of survey evidence—does not support of finding of likelihood of confusion.**

  Evidence of actual confusion ordinarily constitutes the strongest evidence that a defendant's conduct is likely to confuse consumers. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 423 (4th Cir. 1998). However, "[e]vidence of only a small number of

---

[1] The citations to the Trial Transcript as stated herein are for the uncertified realtime version of the transcript.

instances of actual confusion may be dismissed as *de minimis*." *George & Co.*, 575 F.3d at 398. Indeed, a plaintiff's failure to identify more than a *de minimis* number of examples of actual confusion "creates a presumption *against* likelihood of confusion in the future." *Petro Stopping Ctrs., L.P. v. James River Petro., Inc.*, 130 F.3d 88, 95 (4th Cir. 1997) (quotation omitted). "Evidence of the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given the evidence." *George & Co.*, 575 F.3d at 398 (quotation omitted).

Here, even viewing the evidence submitted by Whirlpool in the most generous light possible, at trial Whirlpool only identified 28 instances of alleged possible consumer confusion emails out of almost 800,000 relevant sales by Filters Fast. Even if the jury determines that these are actual instances of confusion, an actual-confusion rate well below 1% is plainly *de minimis*. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) (7 instances of confusion out of 80,000 did not constitute "persuasive evidence of actual confusion"); *cf. CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006) (affirming grant of summary judgment based on lack of likelihood of confusion, and explaining that a survey "show[ing] a confusion rate of 2 percent" was "hardly a sufficient showing of actual confusion"). Thus, the evidence presented by Whirlpool does not show a likelihood of confusion and, in fact, creates a presumption *against* likelihood of confusion. *Petro Stopping*, 130 F.3d at 95.

This threadbare evidence of confusion is especially notable in light of Whirlpool's failure to present survey evidence showing confusion. While survey evidence is not necessarily required, *Rosetta Stone*, 676 F.3d at 156, the absence of survey evidence—especially where the plaintiff has not presented a substantial number of instances of actual confusion—severely undercuts a claim of likelihood of confusion, *see Mars, Inc. v. J.M. Smucker Co.*, No. 1:16-cv-

01451, 2017 WL 4323582, at *2 (E.D. Va. Sept. 27, 2017) (granting summary judgment to defendant based on absence of likelihood of confusion, and relying in part on absence of survey evidence); *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996) (noting that "the absence of surveys is evidence that actual confusion cannot be shown").

Finally, the other factors do not support Whirlpool's claims. For instance, the parties' distribution channels are not completely aligned. Whirlpool's traditional business model achieved sales through brick and mortar channels, while Filters Fast operates exclusively through e-commerce distribution. In fact, Whirlpool admitted that even in 2018 Whirlpool was struggling to figure out e-commerce. *See* 3/6/2019 Trial Tr. at 78:21-25 ("In this case my understanding of that statement would be we've been playing there, but we need to like invest in the talent understanding how to do digital marketing…").

### B.    Whirlpool has failed to present sufficient evidence to permit a reasonable jury to find in its favor on Whirlpool's Lanham Act false-advertising claim.

Whirlpool's Count III raises a claim for false advertising under the Lanham Act. To establish a false-advertising claim, a plaintiff must prove that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 298-99 (4th Cir. 2017) (quotation omitted). A plaintiff *must* show that the defendant's false "statement caused [plaintiff] actual damages." *Id.* at 299.

6

Whirlpool cannot prove its claims for false advertising on the basis of filtration capabilities because it has not presented any evidence of testing on the accused filters to substantiate this baseless claim. As admitted by Whirlpool's witness, Beth Jackson, Whirlpool did not perform any testing of the filtration capabilities of the accused products. *See* 3/6/2019 Trial Tr. at 174:9-15. Without such testing or other competent evidence, Whirlpool cannot prove its claims that Filter Fast's advertisements contain any false statements. Indeed, Whirlpool has presented no evidence that any advertisement by Filters Fast was false or that a substantial segment was likely to be deceived by such a statement. Without testing the accused filters, how could Whirlpool possibly succeed in proving that a Filters Fast advertisement of filtration capabilities was false under the Lanham Act as a matter of law? Whirlpool has no verifiable evidence that any of the accused filters do not filter out lead or other contaminants.

Additionally, even if Whirlpool did provide sufficient evidence, according to Whirlpool filtration is binary, i.e. the consumer believes that water is either filtered or not. *See* DX394 at 16. Consumers focus on price, not the filtration level. In light of this binary nature of filtration, consumers do not care about the specific level of filtration and therefore any false statement is not material to the purchasing decision.

Finally, a plaintiff must demonstrate a causal connection between the misrepresentation and either injury to the plaintiff or a benefit to the defendant. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 672 (E.D. Va. 2004); *see also Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 129-137 (2014) (holding that statutory standing under § 1125(a) requires plaintiff to show that defendant's misrepresentations proximately caused an injury to the plaintiff's commercial interests in reputation or sales); *Verisign*, 848 F.3d at 301 (holding that false-advertising claim failed where plaintiff had not

produced evidence quantifying what portion of defendant's profits resulted from false statements). Here, Whirlpool has failed to satisfy this standard. Whirlpool has failed to present more than one alleged instance of a consumer who would have potentially bought an OEM. Yet, Whirlpool seeks all of Filters Fast profits for every other filter over 5 years despite this clearly *de minimis* evidence with no scientific testing to back up their allegations of falsity.

### C. Whirlpool has failed to present sufficient evidence to permit a reasonable jury to find in its favor on Whirlpool's common-law trademark-infringement claim.

Whirlpool's Count IV raises a claim of trademark infringement under North Carolina common law. Count IV fails as a matter of law for at least two reasons. First, Whirlpool has effectively abandoned Count IV by failing to request jury instructions on the count and failing to address the claim in its trial briefing. Therefore, Whirlpool has waived any right to assert this claim and Filters Fast respectfully request this Count be denied as a matter of law.

Second, trademark infringement under North Carolina common law closely resembles federal trademark law. *See Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 449 (4th Cir. 2010); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Where a federal trademark infringement claim fails as a matter of law, so too does a trademark infringement claim under North Carolina common law that arises from the same facts. *See, e.g.*, *Bell South Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999). Whirlpool's common law claim fails as a matter of law for the same reasons as does its Lanham Act claims.

### D. Whirlpool has failed to present sufficient evidence to permit a reasonable jury to find in its favor on Whirlpool's claim under the UDTPA.

Whirlpool's Count V asserts a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). To establish a claim under the UDTPA, a plaintiff must prove

"that (1) the defendant engaged in conduct that was in or affecting commerce, (2) the conduct was unfair or had the capacity or tendency to deceive, and (3) the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 164 (4th Cir. 2012) (quotation omitted). "Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court." *Id.* (quotation omitted). "[O]nly practices involving some type of egregious or aggravating circumstances are sufficient to violate the UDTPA." *Id.* (quotation omitted).

Whirlpool's UDTPA claim arises from the same set of conduct as its Lanham Act claims. As such, because Whirlpool has failed to present sufficient evidence to support its Lanham Act claims, its UDTPA claim necessarily fails as well. *Yellowbrix, Inc. v. Yellowbrick Solutions, Inc.*, 181 F. Supp. 2d 575, 583 (E.D.N.C. 2001) (holding that where plaintiff had failed to prove trademark infringement under Lanham Act, UDTPA claim premised on same conduct also failed).

Moreover, even a finding of infringement under the Lanham Act does not *per se* establish a UDTPA violation. *Belk*, 679 F.3d at 167. A plaintiff still must demonstrate that the defendant's conduct involved "egregious or aggravating circumstances." *Id.* at 164. "[T]he fundamental purpose of the [UDTPA] is to protect the consumer, and courts invariably look to that purpose in deciding whether the Act applies." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 520 (4th Cir. 1999). As described above, Whirlpool has failed to introduce any appreciable amount of concrete evidence showing that Filters Fast's conduct has generated actionable confusion. This evidentiary hole strongly cuts against a finding of "egregious or aggravating circumstances" that would harm consumers. Additionally, a finding of unfairness

9

under North Carolina law in the nominative fair use context would threaten competition and Filters Fast's rights to truthfully advertise compatibility of its products. As Whirlpool admits, Filter Fast can use the product numbers and brand names at issue in a fair manner. *See* PX37. And the Fourth Circuit has made clear that "it is important that trademarks not be transformed from rights against unfair competition to rights to control language." *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 462 (4th Cir. 2000) (internal citations omitted). Whether the OEM brand name is first or last is merely a difference in grammatical structure that Whirlpool cannot dictate. Nevertheless, Filters Fast worked in good faith with Whirlpool to address Whirlpool's concerns. This is not egregious or aggravating to permit automatic treble damages.

Lastly, Filters Fast maintains its argument that Whirlpool has failed to present proof of specific damages in North Carolina.[2] Therefore, even if the jury find in favor of Whirlpool, the damages should not be trebled. Any treble damages can only arise from sales made in North Carolina. Any other interpretation would be an unconstitutionally broad application of a state statute outside of its borders. *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489–90 (4th Cir. 2007) ("The principle that state laws may not generally operate extraterritorially is one of constitutional magnitude. One state may not "'project its legislation" into another. . .'").

In addition, as Filters Fast has explained in regards to allocation of damages, Whirlpool has not shown any injury or that Defendant's conduct was a proximate cause of such injury. First, Whirlpool has not lost any sales because their sales remained flat during the relevant time period. Additionally, any alleged instances on confusion on behalf of Filters Fast did not result in a lost sale to Whirlpool because Filters Fast returns the product and even will send an OEM in

---

[2] Filters Fast understands this Court's ruling at trial and maintains this argument for preservation on appeal.

replacement. Finally, Whirlpool's internal documents admit that any harm to Whirlpool in this market arise from competition from Amazon Basic's brand of water filters.

## II. WHIRLPOOL HAS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT WOULD PERMIT A REASONABLE JURY TO ALLOCATE WHIRLPOOL'S CLAIMED DAMAGES TO ANY ALLEGED UNLAWFUL CONDUCT BY FILTERS FAST.

A plaintiff that has established a Lanham Act violation, the plaintiff may recover, "subject to the principles of equity, . . . (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*

Under this burden-shifting framework, although a defendant bears the burden of proving its "cost[s] or deduction[s]," the plaintiff's initial burden of proving sales includes the obligation to "show with reasonable certainty" which sales are attributable to allegedly infringing conduct, as opposed to the defendant's sales of other products unrelated to the infringement. *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999); *see also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942) (explaining that the Lanham Act requires the plaintiff "prove . . . the sales of articles bearing the infringing mark"). "[A] plaintiff seeking disgorgement of profits under the Lanham Act bear[s] the initial burden of establishing defendant's gross profits attributable to infringing activity with reasonable certainty." *JL Beverage Co., LLC v. Beam, Inc.*, No. 2:11-cv-417, 2018 WL 1863641, at *1 (D. Nev. April 18, 2018). "Only when the plaintiff has isolated the gross profits attributable to the infringing conduct does the burden shift to the defendant to demonstrate that those profits resulted from something other than infringement, such as the defendant's reputation." *Id.* at *3 (citing *Mishawaka Rubber*, 316 U.S. at 206).

11

Here, Whirlpool has made no attempt to allocate damages to any conduct. For instance, Whirlpool repeatedly relied on evidence of product page on FiltersFast.com involving the WSW-5 replacement filter that is indisputably limited in time, yet still seeks damages on all sales for the WSW-5 filter, both before and after the alleged conduct at issue. This issue is pervasive throughout Whirlpool's allegations and therefore Whirlpool has failed to meet its burden as a matter of law to prove damages attributable to each of the various alleged conduct at issue.

## III.    WHIRLPOOL HAS FAILED TO SUBMIT SUFFICIENT EVIDENCE TO PROVE THAT IT OWNED A VALID TRADEMARK FOR ITS MODEL NUMBERS.

Throughout the trial, Whirlpool presented argument and referred and pointed to documents attempting to convey that they have a protectable trademark interest in part numbers. Any such trademark infringement or unfair competition claim based on a Whirlpool OEM part number fails as a matter of law. *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1469 (10th Cir. 1985) (holding that alphanumeric part numbers are descriptive and require proof of secondary meaning).

Here, Whirlpool admits that Filters Fast can use its model numbers to identify to the consumer that its product is compatible with the OEM filter. *See* 3/7/2019 Trial Tr. at 135:20-25. Whirlpool own witness, Mr. White, testified that he is not personally aware of any trademark registrations for its model numbers. *See id.* at 136:1-7. And the only trademark registrations entered into this case do not contain a registration for a model number. *See* PX1-PX14. Lastly, Whirlpool did not attempt or enter into evidence secondary meaning for any model numbers. And Whirlpool is intimately aware of the probative value of expert testimony on this issue, yet failed to offer such testimony in this case.

> One would presume that a major appliance manufacturer using a mark continuously for two decades could easily document secondary meaning with direct evidence, if the mark had truly gained distinctiveness for its products. Whirlpool has presented no such evidence. A mark owner's failure to present

direct evidence, such as consumer testimony or survey evidence, when it has the means to do so, gives rise to an inference against the existence of secondary meaning."

*Whirlpool Properties, Inc. v. LG Elecs. U.S.A., Inc.*, No. 1:03-cv-414, 2005 WL 3088339, at *11 (W.D. Mich. Nov. 17, 2005). Without secondary meaning, Whirlpool has no protectable interest in its model numbers.

## IV. WHIRLPOOL IS PRECLUDED FROM OBTAINING DAMAGES ON THE WSW-5.

Even if the jury were to find for Whirlpool on liability with respect to the WSW-5, Whirlpool cannot recover damages for the WSW-5 for two reasons. First, as identified in Filters Fast's Motion *in Limine*, Whirlpool has already recovered patent infringement damages for the exact same compatible filters at issue in this case. A recovery of damages for trademark infringement would therefore constitute impermissible double recovery. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006). Whirlpool's argument that it has not yet technically recovered the damages, when it has an express contractual right containing a schedule of payment dates, is merely a distraction. Whether the payments are already made or upcoming, Whirlpool cannot recover from both the manufacturer and the distributor with respect to the WSW-5. Under Whirlpool's logic, it could enter into multiple contracts with delayed payments to avoid what is impermissible under Federal Circuit law. This is untenable.

Second, Filters Fast renews its Motion to Amend the Pleadings to plead release. As explained in Filters Fast's original Motion,[3] Whirlpool entered into a settlement agreement with TST Water releasing its customers with respect to the WSW-5 in September of 2018. TST is the

---

[3] Magistrate Judge Keesler denied the original motion *without prejudice*. *See* Dkt. 150 at 3-4 ("[T]he undersigned recognizes that in deciding the rest of this motion, or in considering other issues as the trial of this matter begins, Judge Whitney may find good cause to allow the requested relief. As such, the undersigned will deny Defendant's motion -- to the extent it seeks leave to amend its Answer -- without prejudice.").

original manufacturer of the WSW-5 and Filters Fast is TST's customer. The plain language of the contract is clear and Filters Fast is released. *See* Dkt. 110 at 3; *see also* Dkt. 110-6 at 3-4, ¶4. Additionally, Whirlpool expressly assumed the risk of releasing such claims. *See id.* at 6, ¶11. No other meaning or interpretation could arise from these clear terms. As a customer of TST, Whirlpool expressly released Filters Fast from all claims with respect to the WSW-5. Whirlpool attempts to read in a limitation due patent infringement only, when that clause is demonstrably only attached to the release for TST itself. Whirlpool's attempt to amends the simple grammatical structure of the two release clauses is disingenuous.

Filters Fast could not have originally pled release in its Answer (Dkt. 45) on May 1, 2018, because the Settlement Agreement did not yet exist. The effective date of the Settlement Agreement was September 24, 2018, and it was not produced here until December 7, 2018. It was therefore impossible for Filters Fast to plead release in May 2018 because none of the evidence existed in May. Here, the Federal Rules allow amending the pleadings *even during and after* trial. In this case, Whirlpool repeatedly focused on alleged conduct relating to the WSW-5 filter. By raising the issue of damages with respect to the WSW-5, Whirlpool opened the door to allowing Filters Fast to amend the pleadings to conform to the evidence. *See Fernandez v. Haynie,* 31 F. App'x 816, 818 (4th Cir. 2002) ("We find that the district court did not abuse its discretion in allowing Fernandez to amend his pleading to conform to the evidence.") (citing Fed. R. Civ. P. 15(b)).

## V. WHIRLPOOL HAS FAILED TO PRESENT SUFFICIENT EVIDENCE OF ALLEGED CONFUSION AT THE POINT OF PURCHASE.

Whirlpool's case also fails because it did not present sufficient evidence of confusion at the purchasing point to survive judgment as a matter of law. On February 28, 2017, Whirlpool explicitly admitted that initial interest confusion is also known as bait and switch. *See* Dkt. 77-9,

14

Ex. E at 18 ("'[B]ait and switch,' also known as 'initial interest' confusion…") (citing *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 828 (7th Cir. 2002)). Filters Fast has previously pointed to this exact admission to Whirlpool on many occasions. For instance, this letter was cited during summary judgment briefing in November of 2018. *See* Dkt. 77-9 at 18. It was also cited in Filters Fast's trial brief. *See* Dkt. 126 at 9. The letter was admitted at trial as PX37. At the summary judgment stage, the Court granted Filters Fast's motion for summary judgment to the extent Whirlpool's claims were based on initial interest confusion. *See* Dkt. 105 at 38:10-16 ("To the extent the plaintiffs are bringing their claim under the initial interest confusion doctrine, the Court grants defendant's motion for summary judgment."). This was the proper result, as initial interest confusion is not recognized by the Fourth Circuit. *See Carl v. BernardJcarl.Com*, 409 F. App'x 628, 630 (4th Cir. 2010)("[T]he district court was correct to dismiss his Lanham Act and state law trademark claims because [the Fourth Circuit] has rejected the 'initial interest confusion' doctrine in trademark cases.") (citing *Lamparello*, 420 F.3d at 316).

Ultimately, Whirlpool's reliance on initial interest confusion theories, such as external webpages that link to the Filters Fast website, cannot form the basis of liability in this Circuit under the doctrine of initial interest confusion.

## VI. WHIRLPOOL ADMITS THAT FILTERS FAST'S CURRENT PRODUCT PAGE ADVERTISING IS ACCEPTABLE AND DOES NOT CREATE A LIKELIHOOD OF CONFUSION

Filters Fast is entitled to judgment as a matter of law that Whirlpool is not entitled to damages or any form of injunctive relief against Filters Fast product pages that reflect the formatting Whirlpool admitted at trial constitutes permissible advertising activity—*i.e.* a fair use of Whirlpool's marks. *See* 3/6/2019 Trial Tr. at 31:16-19 ("Q. Right. And just so, again, moving forward, Whirlpool and Filters Fast won't have a dispute as long as Filters Fast does it

15

like this correct? A. Correct.") (discussing DX224 and PX37). Whirlpool seemingly acknowledges the force and effect of its admission by retracting its claims for damages past October 2018, which is the date of the product page embodied by DX224. *See* Revised PX028. However, Whirlpool also admitted that product pages that substantially follow this same fair use format existed well before October 2018, and even as early as October 2017. *See* 3/6/2019 Trial Tr. at 118:18-119:13. Indeed, the record shows that over a hundred product pages were changed to a fair use format as early as 2017. *See* DX352; *see also* Trial Transcript at 67:9-69:10. Thus, Filters Fast is entitled to judgment as a matter of law that the product pages that follow the format provided in DX224 and PX37 do not create a likelihood of confusion.

Relatedly, Whirlpool's admissions regarding the permissibility of DX224 highlights its failure to satisfy its burden to allocate damages under 15 U.S.C. § 1117. Whirlpool has taken the position since February 2017 that the format specified in PX37 is "fair use." *See* PX37 at 2. And at least 180 product pages complied with this format as of March 2017. *See* 3/7/2019 Trial Tr. at 67:9-68:14; *see also* DX352. Despite an abundance of fair use product pages on FiltersFast.com, Whirlpool failed to allocate damages between sales achieved through fair use product listings and the other product page formats it alleges create a likelihood of confusion. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). Instead Whirlpool seeks *all sales going back to 2014 for all 25 products*, and fails to allocate sales between fair use products pages and other page formats. This failure to prove damages with reasonable certainty warrants denial of Whirlpool's damages claim as a matter of law.

## CONCLUSION

Filters Fast respectfully submits that it is entitled to judgment as a matter of law on each of Whirlpool's claims, and that Whirlpool is not entitled to any damages or injunctive relief.

Dated: March 12, 2019

Respectfully Submitted,

*/s/ Rudolph A. Telscher, Jr.*
Rudolph A. Telscher, Jr. (41072MO)*
Kara R. Fussner (54656MO)*
Paul L. Smelcer (69351MO)*
Brendan G. McDermott (70233MO)*
Steven E. Holtshouser (33531MO)*
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314.480.1500 Telephone
314.480.1505 Facsimile
rudy.telscher@huschblackwell.com
kara.fussner@huschblackwell.com
paul.smelcer@huschblackwell.com
brendan.mcdermott@huschblackwell.com
steve.holtshouser@huschblackwell.com

Thomas P. Heneghan (1024057WI)*
HUSCH BLACKWELL LLP
33 East Main Street, Suite 300
P.O. Box 1379
Madison, WI 53701
608.255.4440 Telephone
608.258.7138 Facsimile
tom.heneghan@huschblackwell.com
*Pro Hac Vice*

Benjamin F. Sidbury, (N.C. Bar #28071)
BRYAN CAVE LEIGHTON PAISNER LLP
One Wells Fargo Center
301 S. College Street, Suite 3900
Charlotte, NC 28202
704.749.8939 Telephone
704.749.9339 Facsimile
ben.sidbury@bclplaw.com

17

Deborah Bowers (N.C. Bar #24937)
Kenneth Kyre, Jr. (N.C. Bar #7848)
PINTO, COATES, KYRE & BOWERS,
PLLC
3203 Brassfield Road
Greensboro, NC 27410
336.282.8848 Telephone
336.282.8409 Facsimile
dbowers@pckb-law.com
kkyre@pckb-law.com

***Attorneys for Defendant Filters Fast, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2019, I caused the foregoing to be filed electronically with the Clerk of the Court and to be served via the Notice of Electronic Filing from the Court's Electronic Filing System upon all counsel of record.

*/s/ Rudolph A. Telscher, Jr.*

19